PULLMAN CO. *v.* ANDERSON.

[81 South. 276, In Banc, No. 20553.]

1. CARRIERS. *Compelling sick passengers to leave berth. Negligence.*
Where a woman passenger who was ill and weak secured a ticket for a sleeping berth on defendant's pullman car, convenient to a berth occupied by her physician and another occupied by her nurse, and was subsequently ordered by the conductor to take a berth in another car, which threw plaintiff into a highly nervous state rendering her extremely ill and she was permitted to retain her berth in the car by another voluntarily giving up his berth. In such case the defendant was liable in damages.

2. SAME.
In such case a verdict for two thousand dollars was excessive and was ordered reduced to three hundred dollars.

APPEAL from the circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Suit by Mrs. Bertha Anderson against the Pullman Company.

From a judgment for plaintiff, defendant appeals.

Mrs. Bertha Anderson was the plaintiff in the lower court, and in her declaration she alleges that she had been operated on for "a severe and critical abdominal trouble;" that, after some weeks subsequent to said operation, she was advised, although still quite weak, that it was safe for her to return to her home in Vicksburg, Miss., provided she could get proper sleeping car accommodations; that finding that she would have the companionship and attention of a physician from Colorado Springs to Memphis, Tenn., and of a trained nurse to Greenville, Miss., she undertook to make said trip; that she purchased lower berth No. 7 from Colorado Springs to Memphis, Tenn., in which car also the said physician and nurse had berths who proposed to look after her comfort and welfare during the trip; that, when she got on the train at Colorado Springs, she was informed by the conductor that the berth for which she bought a ticket, lower 7, had been sold to another party and was occupied by him, but that the conductor gave her instead lower 1; that the next day she was informed by the agent in charge of the car that she would have lower 5 in the same car from Kansas City to Memphis, which was entirely satisfactory to her; that, when she arrived at Kansas City the next night, another conductor than the one who had gone out from Colorado Springs was on and in charge of the sleeper, and that he informed her that No. 5 had already been sold to some one else and was taken, and that he could not give her any berth at all in that car, although the physician and nurse who were accompanying her were allowed to keep their berths which they had purchased at Colorado Springs in that car; that the conductor informed her that the only berth he could get

for her would be one in a sleeper three cars back from the one she was then occupying, which would take her entirely away from the companionship and attention of the physician and nurse under whose care she had been placed and then was; that she told said conductor, who was the agent of the defendant, that it would be impossible for her to be separated from these parties and that she was weak and sick and was not in a physical condition to be worried and annoyed in that way, but that said conductor emphatically informed her that he could not and would not do anything else for her; that for a considerable length of time she endeavored to get said conductor to provide her a berth in the car she then occupied and where her party were located, as she was legally entitled to, but the same was refused her, as aforesaid, whereby she became greatly worried, annoyed, and frustrated, and was thrown into a highly nervous state, and was thereby made extremely sick and was prostrated by reason of the said condition; that, after a while, however, some ladies who had a lower berth in the car where she then was, seeing her nervous and prostrate condition, and realizing that she was not in such physical shape as to stand any such annoyance and trouble, and seeing her great suffering—mental and physical—offered to give up their berth in said car and go to the third car back and take the berth which the conductor was trying to force her to go to, take, and occupy, which offer she accepted; that by reason of the premises she was made sick and sore and suffered great physical and mental pain and apprehension and continued sick all of that night, so that she was unable to get any sleep or rest of consequence and continued in that state all of the next day; that it was the legal duty of the defendant to have given her the berth lower 7 from Colorado Springs to Memphis, Tenn., as it had engaged to do, and it was a breach of duty on its part to have sold and delivered said berth to some one else when it had sold the same to her; that the agents of

defendant knew her condition, or ought to have known, the suffering she was likely to endure, by reason of their failing to do their duty in the premises; and that the damages and injuries which she suffered were the proximate result of defendant's gross, willful, wanton, and negligent conduct, as aforesaid, and without any fault or negligence on her part.

The case was submitted to the jury, and the jury returned a verdict in plaintiff's favor for two thousand dollars.

*Dabney & Dabney,* for appellant.

We gather from plaintiff's declaration and from her evidence that she is claiming damages on two separate and distinct grounds; the first, for failure of the defendant to furnish her the identical berth for which she held a ticket; and the second, because of the effect alleged to have been produced on her health by the conversation she had with the conductor, Mr. Haile, regarding the berth she claimed she should have had upon leaving Kansas City. Had the plaintiff insisted on having the particular berth called for by her ticket, and had the conductor required her to occupy, over her protest, another berth, though equal in point of comfort and convenience to the berth purchased, it might be considered that there had been on the part of this defendant, a technical breach of its contract with this plaintiff and the plaintiff would be entitled to nominal damages, which this honorable court has fixed at one dollar and which carry with them all costs of court; but, where, as in this case, the berth furnished by the defendant was a berth of equal comfort but of superior convenience to the one she bought, and one perfectly acceptable to plaintiff, indeed, preferred by her to any other berth in the car, there is no ground here for demanding even nominal damages.

As to the damages alleged because of the effect of the polite and courteous conversation of the conductor is claimed to have produced on plaintiff's health, they are too insubstantial to invite serious consideration. For these reasons when, at the conclusion of plaintiff's testimony, the defendant moved the trial court to exclude her evidence and direct a verdict for the defendant, the motion should have been sustained:    First: Failure to furnish the identical berth purchased, but in lieu thereof, furnishing another berth equal thereto in point of comfort and convenience.

The authorities are uniform on the proposition that if a berth equal in point of comfort and convenience to the berth purchased is tendered, the sleeping car company fully discharges its duty to the passenger. We cite:  *Ingraham* v. *Pullman Company* (Mass.), 2 L. R. A. (N. S.) 1087; *Mann-Boudoir Car* v. *Dupre* (Miss.), U. S. C. C. A. 21, L. R. A. 289; 54 Fed. Rep. 646; *P. P. Car Co.* v. *Taylor* (Ind.), 32 Am. Rep. 57; 25 A. & E. Enc. (2 Ed.), p. 1116.

Second:  On the proposition that what the conductor said to plaintiff threw her into a nervous and sick condition, for which damages are claimed and undertaken to be proven, we have only to say that the plaintiff herself testifies that while the conductor was "insistent" he was not rude, but was perfectly polite. to her.

Three questions arise here in the consideration of this feature of the case.  First: Can damages be claimed for perturbation of mind owing to a polite conversation with defendant's conductor? Second: If plantiff was mentally and physically disturbed it was due to an "efficient intervening proximate cause" (her already highly nervous and weak condition), for she says herself that had it not been for this condition "she would not have gotten in such a physical condition" as she got into, and had it not been for her already nervous and weak- ened condition the only effect the conversation would

have had on her would "probably" have been to "upset" her. Third: The plaintiff's claim for damages, if it rests on anything seems to rest on mental disturbance followed by physical illness, and the best we can make of the case is that this nervous mental perturbation ("hysteria,") the nurse, Miss Wall calls it, is alleged to have been due to the apprehention that plaintiff might have to go into another car; or, as expressed in two instructions erroneously given the plaintiff, that it was the result of the effort of the conductor to "force" her to go into the other car.

We shall take these three propositions up in the order stated and see to what extent, if any, plaintiff's demands are cognizable at law. On the first proposition: no case may be found where the effects of a perfectly polite conversation have . ever been held the basis of recovery. *N. Y. L. E. & W. Ry.* v. *Bennett,* 50 F. R. 496; 25 A. & E. Enc. (2 Ed.) p. 1116; Current Law, 1904, Vol. 1, p. 455; *Daniels* v. *F. C. & P. R. R.,* 62 S. C. L.; *McCumber* v. *Boston Elevated Ry. Co.* (Mass.), 93 N. E. 698; *Goodhard* v. *The Pa. R. R. Co.* (Pa.), 177 Pa. St. 1; *Rose et ux.* v. *Wilmington & W. R. Co.* (N. C.), 11 S. E. 526; *Grayson* v. *St. Louis Traction Co.* (Mo.), 71 S. W. 730; *M. K. & T. Ry Co. of Texas* v. *Kendrick* (Tex.), 32 S. W. 42; *Pullman Palace Car Co.* v. *Bales* (Tex.), 14 S. W. 855.

On the second proposition as to the existence of an efficient intervening proximate cause: There can be no doubt in the minds of this honorable court that the operations on plaintiff had left ·her in a highly nervous and weakened physical condition; and that but for this condition, the conversation with the conductor, would probably have had no other effect on her than to upset her. We say that whatever the conductor did say to plaintiff could not have aggravated or accentuated the condition she was already in, and that this conversation was not the proximate cause of her condition, but that there was an efficient intervening proximate

cause a real and substantial cause—her already weak and nervous condition, as testified to by plaintiff, before, of course, any question of proximate wrongful act. Here no wrongful act existed. Surely what the conductor politely told plaintiff, cannot be construed as a wrongful act, a tort. His conversation was polite and what he did and said was in the ordinary discharge of his duties. But, assuming that it was, even then it was not the proximate cause of plaintiff's alleged injury. We cite: 8 A. & E. Enc. (2 Ed.), p. 571. In *Logan* v. *Wabash R. R. Co.*, 96 Mo. App. 461, 70 S. W. 734, it is said: In *Pullman Palace Car Co.* v. *Barker*, 4 Colo. 344, we find: U. S. S. C. (24 L. Ed.) 259, p. 346; *Ingraham* v. *Pullman* Co., 2 L. R. A. (N. S.) 1087; 25 A. & E. Enc. (2 Ed.) p. 1123; Citing *P. O. Car Co.* v. *Barker*, 2 Col. 344, *supra.*

On the third proposition, we have only to say that inasmuch as the conductor had said nothing amiss to plaintiff and inasmuch as his entire conversation with her was in the usual discharge of his duties, no evidence was admissible to show what the manner of the conductor was, and, further, inasmuch as plaintiff testifies that the conductor's manner was not rude, but on the other hand that he was polite to her, surely it was error to admit evidence as to what effect this polite conversation had on plaintiff, we shall go into these matters in discussing our assignment of error further on. The facts remain, however, that the trial court (erroneously and over the objection of defendant's counsel) did admit evidence to show the effect this polite conversation had on plaintiff, 8 A. & E. Enc. (2 Ed.) p. 662; *Darrah* v. *R. R. Co.*, 65 M. R. 14; *W. U. Tel. Co.* v. *Rogers*, 68 M. R. 748; Damages, 8 Ruling Case Law, Brown, 127 Ky. 732, 13 L. R. A. (N. S.) 1135; *Randolph* v. *Hannibal & St. Joe Ry. Co.*, 18 Mo. App. 609; *Spohn* v. *M. P. R. Ry. Co.*, 116 Mo. 617, 22 S. W. 690; *Strange* v. *M. P. Ry. Co.*, 61 Mo. App. 586; Pierce on Railroads (Ed. 1881), 302; *Indianapolis etc.*

---

---

*Ry. Co.* v. *Birney,* 71 Ills. 391; *Vide,* also, *Hobbs* v. *L. & N. Ry. Co.,* L. R. 10 Q. B. 111; *P. P. Car Co.* v. *Barker,* 4 Colo. 344; *Francis* v. *St. L. Transfer Co.,* 5 Mo. App. 7; *Deming* v. *C. R. I. & P. Ry.,* 80 Mo. App. 152.

It is true the evidence tends to prove that the plaintiff's sickness was the result of the fright, worry and overtaxation of strength occasioned by defendant's negligence, but this was not a contemporaneous physical injury within the meaning of the rule allowing damages for fright and mental suffering when connected with a physical injury." *Haile* v. *T. & P. Ry. Co.* (La.), 23 L. R. A. 774; *Reed et al* v. *Ford,* (Ky.), 19 L. R. A. (N. S.) 225; *Miller* v. *B. & O. S. W. R. R. Co.* (Ohio), 18 L. R. A. (N. S.) 949; *Ewing et al.* v. *P. C. C. & St. L. R. R. Co.* (Pa.), 14 L. R. A. 666.

Mere fright, unaccompanied by bodily injury, cannot constitute a cause of action. *Spade* v. *L. & B. R. R. Co.* (Mass.), 38 L. R. A. 512; *Mitchell* v. *Rochester R. R. Co.* (N. Y.), 34 L. R. A. 781; *Chittick* v. *Phila. R. T. Co.* (Pa.), 22 L. R. A. (N. S.) 1073; *McMumber* v. *Boston, etc., R. R. Co.,* 93 N. E. 698; *Fortenberry* v. *State,* 55 M. R. 403; *Layton* v. *State,* 56 M. R. 791; *Hooks* v. *Mills,* 101 M. R. 91. So. holding, *Newman Lbr. Co.* v. *Dantzler,* 197 M. R. 31; *Gulf & Ship Island R. R. Co.* v. *Adkinson,* 77 S. R. 945; *Hooks* v. *Mills,* 101 M. R. 91; *Ingraham* v. *The Pullman Co.* (Mass.), 2 L. R. A. (N. S.) 1087; *Mann-Boudoir Car Co.* v. *Dupre,* (Miss.), (U. S.) C. C. A., 21 L. R. A. 289, 54 F. R. 646; *P. P. Car Co.* v. *Taylor,* (Ind.), 32 Am. Rep. 57; 25 A. & E. Enc. (2 Ed.). p. 116; *Trigg* v. *St. L. K. C. & N. Ry. Co.,* 74 Mo. 147, 41 Am. Rep. 305; Pierce on Railroads (Ed. 1881), 302; *Indianapolis, etc., Ry. Co.* v. *Birney,* 71 Ills. 391; Vide also, *Hobbs* v. *L. & S. Ry. Co.,* L. R. 10 Q. B. 11; *P. P. Car Co.* v. *Barker,* 4 Col. 344, 34 Am. Rep. 89; *Francis* v. *St. L. Transfer Co.,* 5 Mo. App. 7; see also, *Pullman Car Co.* v. *Moise,* (Texas), 187 S. W. 249; *Western Union Tel. Co.* v. *McNairy,* 34 Tex. Civ.

App. 389, 78 S. W. 969; *Tel. Co.* v. *Edmondson,* 91 Tex. 206, 42 S. W. 549; *Tel. Co.* v. *Reed,* 37 Tex. Civ. App. 445, 84 S. W. 296; *Hart* v. *Tel. Co.,* 53 Tex. Civ. App. 275, 115 S. W. 638.

"We submit, therefore that in view of the manifold errors committed by the trial judge, and the failure of the plaintiff to make out a case of legal liability against this defendant, this honorable court will reverse and dismiss this suit.

*George Anderson,* for appellee.

While we do not believe it is necessary to cite a single case in support of our contention as it seems to us the mere fact themselves speak louder than argument or precedent in behalf of the justice of this suit and of this verdict, still we call the court's attention to a few of the leading authorities which we believe bear directly upon the point at issue, and are decisive of the question.

It matters not, we submit, whether this Pullman company shall be considered a common carrier, as obtains in most of the states of the union, including Mississippi, or not, it owes a duty to the traveling public patronizing it such as will make it liable for any such conduct as this record shows it was guilty of towards the appellee on this occasion.

In the case of *Pullman Palace Car Company* v. *Taylor* (Ind.), 32 Am. Rep. 57, the plaintiff purchased of the sleeping car company at Indianapolis a ticket entitling him to continuous passage to New York City in Lower Berth No. 6, Car 96, paying therefor the sum of fifty dollars but finding that the berth was occupied by another party, whereupon plaintiff was deprived of the use of the berth purchased, he was offered by the conductor an upper berth in another part of the car. (How like the facts in the instant case.) The court said

in passing upon the rights of plaintiff: "It was for the particular berth in the car that the plaintiff paid his money. That berth was the one which, by the contract he was to have." . . . "The defendant could not, without breach of its contract, deprive him of that berth, although it offered to furnish him another, any more than the plaintiff could have claimed another, if he had happened to change his mind and desire another."

Counsel further contend that because Dr. Winston and Miss Wall, the physician and nurse, were not actually employed by Mrs. Anderson to look after her she had no legal right to base her claim against the company for being deprived of their companionship and service. Miss Wall very aptly puts it in her answer to the cross-question of counsel on that point, when she said that while she was not employed by Mrs. Anderson, she was in her service, as she had agreed to assume that duty and that curtesy before leaving Colorado Springs, when she told Dr. Shivers she would look after Mrs. Anderson as far as Greenville, Mississippi, as much as one hundred miles south of Memphis. The same was true, of Dr. Winston. So it does not make any difference whether they were being paid money for that service or not, if they were undertaking to furnish it, the appellee had a right to rely on it, and the Pullman Company had no right to break that relation on the flimsy plea that these parties were under no legal obligation to render the service.

In the annotation of *Mann-Boudoir Car Company* v. *Dupree,* a Mississippi case by the way, 21 L. R. A. 295, the annotator of the *Taylor case, supra,* uses this language as a finding for the court: "A passenger in a sleeping car is entitled to a continuous passage in the berth and car assigned to him by the company at the commencement of his journey, or if there is any change upon the route to accommodation in a car equally safe, comfortable and convenient."

The only car equally safe, comfortable and convenient in the instant case was the car in which her nurse and doctor were allowed to ride and sleep. See, also, note to *Patterson* v. *Steamship Co.*, 5 L. R. A. (N. S.) at page 1014. To the same effect in *Speaks* v. *So. R. R. Co.*, (S. C.), 38 L. R. A. (N. S.), p. 258, note.

Counsel rely heavily on this Mann-Boudoir case. The facts of that case and those of the instant case are as wide apart as the poles. *Pullman Co.* v. *Riley* (Ala.), 59 So. 761, 763 & 764; Beale on Sleeping Cars, secs. 341-345; *Riley case, supra; Nevin* v. *Pullman Palace Car Co.*, 106 Ill. 222; *Pullman Co.* v. *Meyer*, (Ala.), 70 So. 763, 766-767, Citing *Ala. Ry. Co.* v. *Appleton*, 171 Ala. 234; *Pullman Palace Car Co.* v. *Lawrence*, 74 Miss. 782.

As to the proximate cause of her injury, counsel say that it was her operation and not the controversy with conductor that brought about her suffering; Mrs. Anderson says that if she had not been in such weakened state, possibly she could have stood the controversy better. The Pullman Company was under a legal duty and obligation not to bring about any such controversy with anybody, we don't care what their physical condition may have been, over a matter of that kind. It was its legal duty to give Mrs. Anderson what she paid for and to allow her to occupy the same car with her nurse and physician all the way from Colorado Springs to Memphis undisturbed and without any controversy or friction. Had she been an Amazon in strength and in purpose she was entitled to that duty and right. If she had been a weakened and helpless invalid, she would have been entitled to no less than that kind of treatment. Because at that time she was in a weakened condition and more susceptible to the influences of such a controversy, cannot possible ensue to the benefit of this Pullman Company. The jury had that question before them. They passed upon it.

802    U. S. Fid. & Guar. Co. v. Lbr. Co. [Sup. Ct.

Opinion of the court.                    [119 Miss.

As to the excessive verdict, we do not believe the court will consider that a moment. If she was entitled to a verdict at all, outside of a nominal amount, as counsel for the opposition contend should have been given, it certainly cannot be said the two thousand dollars is too much. Indeed, it is quite a moderate amount when we take into consideration what the appellee had to suffer during that forty-eight hours trip from Colorado Springs to Vicksburg, Mississippi, and for several days thereafter on account of the culpable, inexcusable and outrageous conduct of the company in selling her berth to another party, together with the great wealth and power of the appellant. We appeal in this case from the doctrine of might, as seems to be the rule of appellant, to the doctrine of right as in both law and morals the appellee is entitled to.

We submit, therefore, to this honorable court that this case should be promptly affirmed.

Per Curiam.

The judges are equally divided on the question of the appellant's liability, but all agree that, conceding liability, the verdict is grossly excessive. If a remittitur of all in excess of three hundred dollars be entered, the judgment of the court below will be affirmed; otherwise, it will be reversed and remanded.

*Affirmed conditionally.*